UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:<br><br>Festus Kigen and<br>Lydia J. Chebii,<br><br>Debtors. | Case No. 23-25579-rmb<br><br>Chapter 7 |
| State of Wisconsin, Department of Workforce Development,<br><br>Plaintiff,<br><br>v.<br><br>Lydia J. Chebii,<br><br>Defendant. | Adversary No. 24-02142-rmb |

**DECISION ON MOTIONS FOR SUMMARY JUDGMENT**

Employers in Wisconsin are required to obtain worker's compensation insurance. When an employee of an uninsured employer is injured, the State of Wisconsin Department of Workforce Development (the "Department") pays the employee's claim, and the uninsured employer is required to reimburse the Department for amounts paid to and on behalf of the employee. The resulting reimbursement debt is also owed by certain individuals that control the employer, including members of an employer that is an LLC.

Debtor-defendant Lydia Chebii owned an LLC that failed to obtain the required worker's compensation insurance. After an employee was injured on the job, the Department assessed liability against the LLC and sought to impose liability on Chebii personally as a member of the LLC. The Department filed this adversary proceeding seeking a declaration that the debt owed by Chebii is nondischargeable under 11 U.S.C. §§ 523(a)(1)(A) and 523(a)(7). The parties filed cross motions for summary judgment. The Court concludes that Chebii's liability is not an excise tax under 11 U.S.C. § 507(a)(8)(E) and that, if it is a penalty, it is compensation for actual pecuniary loss, so the debt is not excepted from discharge under § 523(a)(7).

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the order of reference from the district court pursuant to 28 U.S.C. § 157(a). See 84-1 Order of Reference (E.D. Wis. July 10, 1984) (available at https://www.wieb.uscourts.gov/general-orders) (last visited Sept. 30, 2026). Determination of the dischargeability of a debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## BACKGROUND

### Wisconsin Worker's Compensation Act

The Wisconsin Worker's Compensation Act (the "Act") is codified in chapter 102 of the Wisconsin statutes. The Act is administered by the Department.

The Act requires that all employers carry worker's compensation insurance. Wis. Stat. § 102.28(2)(a). This requirement is subject to certain exemptions that are

not applicable here, including the option to self-insure if certain requirements are met. Wis. Stat. § 102.28(2)(b), (bm). Employers subject to the worker's compensation insurance requirement can purchase insurance from a private insurance company or they can be assigned an insurance carrier from an assigned risk pool. Declaration of Aaron Galarowicz (Dkt. No. 18) ("Galarowicz Decl.") ¶ 6.

The Act governs the payment of worker's compensation claims by injured employees. Wisconsin has established an Uninsured Employers Fund (the "Fund") to provide coverage for employees of uninsured employers. Wis. Stat. § 102.80. An employee of an uninsured employer who suffers a compensable injury on the job is entitled to the same compensation that he would otherwise be paid if his employer had insurance, and the injured employee can seek payment of his claim from the Fund. Wis. Stat. § 102.81(1)(a). In addition to requesting payment from the Fund, the injured employee can also seek compensation from the uninsured employer or a responsible third party. Wis. Stat. § 102.81(3).

The Department can pay injured employees of uninsured employers directly from the money in the Fund or through reinsurance, excess, or stop-loss insurance purchased by the Fund. Wis. Stat. § 102.81(1)(a), (2); *see also* Galarowicz Decl. ¶ 9. If the Department pays an injured employee from the Fund, then the uninsured employer "shall reimburse the [D]epartment for any payment made" on the employee's claim, as well as "for any expenses incurred in administering the claim." Wis. Stat. § 102.82(1). The Department can also assess various penalties against an uninsured employer. *See* Wis. Stat. § 102.82(2); Wis. Stat § 102.85.

If the employer is a limited liability company, "any member or manager" of the LLC "may be found individually and jointly and severally liable for the payment, interest, costs and other fees" owed by the employer entity. Wis. Stat. § 102.83(8).

**Undisputed Facts**

Debtor Lydia Chebii owned Baraka Xpress, LLC, a trucking company ("Baraka"). Declaration of Lydia Chebii, Dkt. No. 20-1 ("Chebii Decl.") ¶ 2. Baraka hired and paid drivers as independent contractors, to whom Baraka issued 1099s each year. *Id.* ¶ 3. Chebii claims she was unaware of any obligation under the Act to obtain worker's compensation insurance for the drivers. *Id.* ¶¶ 4-5.

On April 28, 2021, one of Baraka's drivers suffered a serious work-related injury. Galarowicz Decl. ¶ 22. Baraka did not have worker's compensation insurance at the time, and the employee filed a claim with the Fund. *Id.* ¶¶ 23-24. After investigation, the Fund determined that Baraka was subject to the Act and that the employee had sustained a compensable injury. *Id.* ¶ 27. The Fund advised Baraka on July 19, 2022 that it would be responsible for all costs associated with the claim that were paid by the Fund. *Id.* ¶¶ 27-28.

In total, the Fund paid $1,349,502.37 in medical bills and other expenses related to the employee's claim, which it charged to Baraka. *Id.* ¶ 30. The Department also assessed a penalty in the amount of $78,286.80 against Baraka for its failure to carry worker's compensation insurance. *Id.* ¶ 31.

Baraka paid the penalty in full and made some payments on the reimbursement debt. Galarowicz Decl. ¶¶ 33-35. Before paying the reimbursement

debt in full, Baraka filed a chapter 7 bankruptcy petition. *In re Baraka Xpress LLC*, Case No. 23-25793 (Bankr. E.D. Wis.). The Department recovered some funds from its proof of claim in Baraka's bankruptcy and by pursuing a third party on the injured employee's behalf. Galarowicz Decl. ¶ 36. The remaining reimbursement debt is $1,219,734.05, plus interest. *Id.* ¶ 39.

As a member of Baraka, Chebii may be personally liable for the debt pursuant to Wis. Stat. § 102.83(8). The Department was in the process of fixing Chebii's liability when she filed a chapter 7 bankruptcy petition on December 4, 2023, Case No. 23-25579. The Department filed a proof of claim on May 1, 2024 in the amount of $1,237,918.59 for the reimbursement claim owed to the Fund (the "Reimbursement Debt"). *See* Claim No. 2. The Department indicated that its claim was for "[r]eimbursement of injury expenses pursuant to Wis. Stat. § 102.82(1)" and that its claim was entitled to priority pursuant to 11 U.S.C. § 507(a)(8).[1] The Department also filed this adversary proceeding seeking a declaration that the Reimbursement Debt is nondischargeable under 11 U.S.C. § 523(a)(1)(A) and, alternatively, under 11 U.S.C. § 523(a)(7). Dkt. No. 1. The parties have filed cross motions for summary judgment. Dkt. Nos. 16, 17, 19, 20.

---

[1] No one objected to the Department's claim in the main bankruptcy, and a timely and properly filed proof of claim is "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Neither party has argued that the presumptive validity of the Department's claim has any bearing on resolution of the issues here. Indeed, Chebii likely lacked standing to object to the priority of the proof of claim. *See In re Olsen*, 123 B.R. 312, 313 (Bankr. N.D. Ill. 1991) ("It is well established in the Seventh Circuit and other circuits that an insolvent debtor is not a party in interest within the meaning of § 502(a) because the debtor has no pecuniary interest in the distribution of his/her assets among creditors."). Her inability to raise the priority issue in the main bankruptcy should not affect her ability to raise it here.

## DISCUSSION

The Department's adversary complaint includes two claims. Count I seeks a declaration of nondischargeability under 11 U.S.C. § 523(a)(1)(A), which excepts from discharge certain tax debts, and Count II seeks a declaration of nondischargeability under 11 U.S.C. § 523(a)(7), which excepts from discharge certain penalties owed to governmental creditors.

"The basic purpose of a discharge in bankruptcy is to give debtors a fresh start." *O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn)*, 339 F.3d 559, 563 (7th Cir. 2003). "Congress nevertheless has decided that various considerations of public policy require that certain debts be excluded from the general principle of discharge." *Id.* Those exceptions to discharge "must be strictly construed in favor of the debtor to comply with the 'fresh start' policy underlying the Bankruptcy Code." *Chicago & Vicinity Laborers' District Council Pension Fund v. Bright (In re Bright)*, 655 B.R. 464, 472 (Bankr. N.D. Ill. 2023).

The Department's motion for summary judgment simply seeks "summary judgment as a matter of law" without saying whether the Department seeks summary judgment on Count I or Count II or both. Dkt. No. 16. The Department's initial brief incudes a request that the Court "conclude that the debt is a nondischargeable excise tax under the Bankruptcy Code." Dkt. No. 17 at 13. Its reply brief includes a request that the Court "grant the state's motion for summary judgment." Dkt. No. 22.

Chebii's motion for summary judgment similarly includes a statement that the Chebii "is entitled to summary judgment as a matter of law" without referring

to Count I or Count II. Dkt. No. 19. Chebii's initial brief devotes approximately one page of argument to a discussion of § 523(a)(7). Dkt. No. 20 at 9-10. Chebii's initial brief and reply brief both include a request that the Court find the Reimbursement Debt "to be a non-tax, non-priority, dischargeable claim." Dkt. No. 20 at 17; Dkt. No. 23 at 7. The Court could not conclude that the Reimbursement Debt is dischargeable, as Chebii requests, unless it determines that neither § 523(a)(1)(A) nor § 523(a)(7) renders the debt nondischargeable.

Based on the parties' motions and briefs, the Court has determined that the Department seeks summary judgment in its favor on Count I and Chebii seeks summary judgment in her favor on Counts I and II. Summary judgment is appropriate if the pleadings and affidavits on file show there is no genuine dispute as to any material fact and the moving party can establish it is entitled to judgment as a matter of law. *See* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56.

**COUNT I - § 523(a)(1)(A)**

In Count I, the Department seeks a declaration that the Reimbursement Debt is a nondischargeable under 11 U.S.C. § 523(a)(1)(A). The statute excepts from discharge "any debt . . . for a tax or a customs duty . . . of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed." 11 U.S.C. § 523(a).

As relevant here, 11 U.S.C. § 507(a)(8) assigns eighth-level priority to claims of governmental units that are for, among other debts:

> (E) an excise tax on—

> (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
>
> (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

11 U.S.C. § 507(a)(8)(E).

To determine whether a claim is excepted from discharge under § 523(a)(1)(A) by way of § 507(a)(8)(E), the Court must determine whether the underlying debt is: (A) a ***tax***, (B) an ***excise*** tax, and (C) an excise tax ***on a transaction***.

**Whether the Reimbursement Debt is a Tax**

To determine whether the Reimbursement Debt falls within § 507(a)(8)(E), we must start with "the question whether the exaction is a tax to begin with." *In re Huenerberg*, 590 B.R. 862, 865 (Bankr. E.D. Wis. 2018) (*Huenerberg I*) (citing *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 215 & n.1, 224 (1996)), *aff'd sub nom. Internal Revenue Serv. v. Huenerberg*, 623 B.R. 841 (E.D. Wis. 2020) (*Huenerberg II*). Not all government claims are taxes[2], and not all tax claims are given priority under § 507(a)(8).

The Supreme Court has defined the term "tax" as "a pecuniary burden laid upon individuals or their property for the purpose of supporting the government," *State of New Jersey v. Anderson*, 203 U.S. 483, 492 (1906); "an enforced contribution

[2] As the Ninth Circuit has pithily explained: "The government can have many claims that are not in the nature of taxes. For example, if someone crashes his plane into Mt. McKinley and dies, the Department of the Interior sends his estate a bill for littering the mountain. That is analogous to a private landowner's claim for trespass, not to a tax." *In re George*, 361 F.3d 1157, 1163 (9th Cir. 2004).

to provide for the support of government," *United States v. La Franca*, 282 U.S. 568, 572 (1931); and a "pecuniary burden[] laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it," *City of New York v. Feiring*, 313 U.S. 283, 285 (1941). *See also United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996) (collecting definitions).

The Seventh Circuit has said that "[a] tax is generally defined as a source of revenue that provides general benefits to the public." *Reedsburg Utility Comm'n v. Grede Foundries, Inc. (In re Grede Foundries, Inc.)*, 651 F.3d 786, 794 (7th Cir. 2011). Taxes, which are "exactions designed to generate revenue," can be distinguished from "exactions designed . . . to punish" (i.e., fines or penalties) and exactions that "compensate for a service that the state provides to the persons or firms on whom or on which the exaction falls" (i.e., fees). *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 728 (7th Cir. 2011).

In evaluating whether an exaction is a tax as opposed to a penalty or a fee "state law terms are not dispositive in bankruptcy law." *Grede Foundries*, 651 F.3d at 794. Instead, courts "look to the state statute merely to determine whether 'its incidents are such as to constitute a tax within the meaning' of the Code provision." *Id.* (quoting *Reorganized CF & I Fabricators*, 518 U.S. at 220-21); *see also Reorganized CF & I Fabricators*, 518 U.S. at 220 (noting that the courts must "look behind the label placed on the exaction" and examine "operation of the provision"); *Carpenter v. Shaw*, 280 U.S. 363, 368-69 (1930) ("Where a federal right is concerned

we are not bound by the characterization given to a state tax by the state courts or legislatures, or relieved by it from the duty of considering the real nature of the tax and its effect upon the federal right asserted.").

For example, in *Grede*, the parties disputed whether certain municipality utility charges qualified as a tax because state law permitted arrears to be "levied as a tax." 651 F.3d at 794. The Seventh Circuit held that the charges at issue were not for the general benefit of the public; instead, they "d[id] nothing more than recover the [provider's] costs of delivering utility services." *Id.* at 795. Similarly, in *In re Peete*, 642 B.R. 299 (Bankr. E.D. Wis. 2022), the bankruptcy court held that charges for "health abatement" and "building reinspection" appearing on the debtor's property tax bill were fees, rather than taxes, because the charges "appear[ed] to have been assessed not for a public benefit, but to recover the City's costs in cleaning up litter at [the debtor's] property, and for performing required inspections at his property based on his failure to remedy building code violations." *Id.* at 311-12.

In contrast, in *Oneida Tribe of Indians of Wisconsin v. Village of Hobart*, 732 F.3d 837, 841 (7th Cir. 2013), the Village of Hobart, Wisconsin "passed an ordinance assessing stormwater management fees on all parcels of land in the village, including those owned by the Oneida Nation of Wisconsin, an Indian tribe." *Id.* at 839. The collected assessments would be used to finance construction and operation of a stormwater management system. *Id.* The Seventh Circuit held that the assessment was a tax because it was "designed to generate revenue to pay for a

governmental project" rather than as "a fee for a service provided to a particular landowner" because there was no "causal relation" between the landowner's activities and the amount of stormwater runoff from the landowner's property. *Id.* at 842.

"In a statutory workers' compensation scheme, there are generally three types of governmental assessments that can be made upon employers: premiums for a state-run insurance fund, direct assessments upon employers by a state fund, and reimbursement claims for monies paid to an injured employee." *Workers' Comp. Tr. Fund v. Saunders*, 234 B.R. 555, 562 (D. Mass. 1999). This case involves the third type of claim—a reimbursement claim for monies paid to an injured employee.

The Department is not the first governmental agency to claim that reimbursement claims are excise taxes under § 507(a)(8)(E). Most cases addressing the issue are guided by the leading circuit case discussing whether a particular charge is a tax. *County Sanitation District No. 2 of Los Angeles County v. Lorber Industries of California, Inc. (In re Lorber Indus. of California, Inc.)*, 675 F.2d 1062 (9th Cir. 1982). In the *Lorber* case, the Ninth Circuit determined that four factors guide the determination whether a particular exaction is a tax. The exaction must be:

> (1) an involuntary pecuniary burden;
> (2) imposed by the state legislature;
> (3) for a public purpose;
> (4) under the police or taxing power.

*Id.* at 1066. *Lorber* decision addressed whether a surcharge for nonresidential users of a county wastewater system was a tax afforded priority status under section

64(a) of the Bankruptcy Act. The decision did not address whether the charge was an "excise tax" under § 507(a)(8)(E) of the Bankruptcy Code.

In *Ohio Bureau of Workers' Compensation v. Yoder (In re Suburban Motor Freight, Inc.)*, 36 F.3d 484 (6th Cir. 1994), the Sixth Circuit determined that the *Lorber* factors cast too wide a net: "[A]ll money collected by the Government goes toward defraying its expenses, and is used for public purposes. The threat of the *Lorber* reasoning, then, is that the Government automatically wins priority for all money any debtor owes it, regardless of the nature of the payments." *Id.* at 488 (quotation omitted). The Sixth Circuit then added two additional requirements to determine whether a charge is an excise tax: the obligation must be "universally applicable to similarly situated entities" and "according priority treatment to the government claim not disadvantage private creditors with like claims." *Id.* The court concluded that the state's reimbursement claim was not an excise tax because the employer's liability was "a penalty discretely imposed due to its disregard of its statutory obligations" and it was not a liability universally applicable to similarly situated employers. *Id.* at 489. The court did not grapple with the meaning of the term "excise" and focused primarily on whether the charge was a tax.

Following *Lorber* and *Suburban*, most cases addressing reimbursement claims such as the one at issue here analyze whether the claim is a tax under the *Lorber* and *Suburban* factors. *See California Self-Insurers' Security Fund v. Lorber Industries of California (In re Lorber Industries of California, Inc.)*, 564 F.3d 1098, 1103 (9th Cir. 2009) ((holding that a reimbursement claim under California law was

not an excise tax because "a private creditor could have a claim for reimbursement or liquidated damages" and that creditor "could be disadvantaged by granting the government's claim priority"); *George v. Uninsured Employers Fund (In re George)*, 361 F.3d 1157, 1162-63 (9th Cir. 2004) (distinguishing *Camilli* and holding that a reimbursement claim under California law is not a tax); *Industrial Commission of Arizona v. Camilli (In re Camilli)*, 94 F.3d 1330, 1333-35 (9th Cir. 1996) (holding that a reimbursement claim under Arizona law was a "tax" under § 507(a)(8)(E) and therefore nondischargeable under § 523(a)(1)(A)); *Michigan Uninsured Employers' Security Fund v. Hynes (In re Hynes)*, 229 B.R. 405, 409 (Bankr. W.D. Mich. 1998) (holding that a reimbursement claim under Michigan law is an excise tax); *Waldo v. State of Montana Dept. of Labor & Indus. Uninsured Employers Fund (In re Waldo)*, 186 B.R. 118, 123-25 (Bankr. D. Mon. 1995) (holding that a reimbursement claim under Montana law is an excise tax).

The analysis in these decisions is unhelpful for at least two reasons. First, the decisions appear to assume that if the reimbursement claim is a tax then it is necessarily an excise tax under § 507(a)(8)(E). Whether a reimbursement claim is a tax is only part of the question. Not all taxes are given priority treatment under § 507(a)(8). Decisions determining that a reimbursement claim falls under § 507(a)(8)(E) without discussion of the additional requirements of that section—i.e., that tax must be an excise tax on a transaction—are not persuasive.

Second, the Seventh Circuit has "rejected the cumbersome multifactor tests that some courts had used to try to distinguish between taxes and fees." *Oneida*

*Tribe*, 732 F.3d at 841. Instead, courts should look to the nature of the exaction and determine whether it is "designed to generate revenue," "to punish," or "to compensate for a service." *Id.* at 841-42 (quoting *Empress Casino*, 651 F.3d at 728. As the Seventh Circuit has noted, "there is room for debate" about what types of charges are taxes, *Grede Foundries*, 651 F.3d at 794, and "[t]he line between a tax and a fee, and a tax and a fine, is sometimes fuzzy," *Empress Casino*, 651 F.3d at 729.

A reimbursement claim under Wisconsin law has some attributes of a tax. It is "imposed by legislative fiat" and its imposition is "beyond the control of the debtor." *See Camilli*, 94 F.3d at 1333. It is imposed for a public purpose—the protection of employees who are injured on the job. *See New Neighborhoods, Inc. v. W. Virginia Workers' Comp. Fund*, 886 F.2d 714, 719-20 (4th Cir. 1989) ("The 'public' purpose of [worker's compensation] systems . . . is to allocate the burden of the costs of injured employees and/or of their dependents among employers rather than among the general public.").

Reimbursement claims also have attributes that could lead to the conclusion that they are not a tax. A charge for reimbursement of the Fund is not imposed on all employers. It is imposed only on those who do not buy appropriate worker's compensation insurance, and then only if an employee is injured *and* makes a claim against the Fund *and* the Department. *See George*, 361 F.3d at 1161 (noting that a reimbursement claim does not function like a tax because "[t]he amount is not imposed on all employers, just those who do not buy workers' compensation

insurance or do not property self-insure, and the amount is not for the general support of government, but rather for reimbursement of the expense the government bears in paying the employer's workers' compensation obligation"). Moreover, the Department may waive a reimbursement claim against an employer under certain circumstances. *See* Wis. Stat. § 102.82(2)(am), (ar). It also appears that imposition of liability on individual members of an LLC employer (like Chebii) is discretionary. Wis. Stat. § 102.83(8) ("any member or manager of an uninsured employer that is a limited liability company ***may*** be found individually and jointly and severally liable") (emphasis added).

Reimbursement claims are not used to generate general revenue for public projects; the money is deposited in the Fund and used only to compensate other injured employees of uninsured employers. And reimbursement claims, unlike other taxes, are not "established at a fixed or statutory rate"; they instead are assessed "upon whatever amount may be required to care for the injured employee." *In re Freymiller Trucking, Inc.*, 194 B.R. 914, 916 (Bankr. W.D. Okla. 1996).

These considerations demonstrate that categorizing a reimbursement claim as a tax or some other type of obligation under Wisconsin law is not an easy task. And the decisions from other courts regarding reimbursement claims under similar state worker's compensation laws "have been mixed." *See Saunders*, 234 B.R. at 562-63 (collecting cases). The Court need not enter the fray and grapple with the question whether the Reimbursement Debt here is a tax because the Court concludes that it is not an "excise tax" "on a transaction."

## Whether the Reimbursement Debt is an Excise Tax

Most of the case law cited by the parties focuses on the important question whether the reimbursement claim is a tax, but the cases tend to ignore the distinct question whether the exaction is an ***excise*** tax. *See, e.g.*, *Camilli*, 94 F.3d at 1331 ("The sole issue is whether Camilli's debt to the ICA is a 'tax' within the meaning of the Bankruptcy Code, and therefore nondischargeable."). However, "[t]he Bankruptcy Code does not treat *all* unpaid taxes as priority claims. Section 507(a)(8) grants priority status to 'allowed unsecured claims of governmental units, *only* to the extent such claims' fall within seven enumerated types of taxes, each of which has its own time restrictions." *Huenerberg II*, 623 B.R. at 846.

The Seventh Circuit has defined "excise tax" under § 507(a)(8)(E) as "[a] tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)." *Ill. Dep't of Revenue v. Hayslett/Judy Oil, Inc.*, 426 F.3d 899, 902 n.1 (7th Cir. 2005) (quoting Black's Law Dictionary 605 (8th ed. 2004));[3] *see also Rosenow v. State of Ill., Dep't of Revenue*, 715 F.2d 277, 280 n.4 (7th Cir. 1983) (defining "excise" as "a tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege" or a "tax laid on manufacture, sale, or consumption of commodities" (cleaned up) (quoting Black's Law Dictionary 506 (5th ed. 1979)).

Other federal courts apply the same definition. The "consensus" is that "'excise tax' as used in § 507(a)(8)(E) generally refers to '[a] tax imposed on the

[3] The definition of "excise tax" in the most recent edition of Black's Law Dictionary is identical to the one appearing in the eighth edition. *See* TAX, Black's Law Dictionary (12th ed. 2024).

manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee).'" *United States of America v. Chesteen (In re Chesteen)*, 799 F. App'x 236, 240 (5th Cir. 2020) (collecting cases); *Rizzo v. State of Michigan, Department of Treasury (In re Rizzo)*, 741 F.3d 703, 706 (6th Cir. 2014) (providing the same definition). *See also George*, 361 F.3d at 1163 ("In the context of taxes, the term 'excise taxes' has traditionally been used in the United States to refer to taxes on 'the sale of a specified commodity' measured by value or quantity, such as alcohol, tobacco, or motor fuel, as opposed to taxes on income.").

Judges in the bankruptcy court and district court in this district have addressed the scope of excise taxes entitled to priority under § 507(a)(8)(E) in a different context. *Huenerberg I*, 590 B.R. at 869; *Huenerberg II*, 623 B.R. at 845-46. The *Huenerberg* case involved the mandate that all individuals obtain health insurance in the Patient Protection and Affordable Care Act (ACA), 26 U.S.C. § 5000A(b) (2016). Individuals who failed to obtain health insurance would owe a "shared responsibility payment" (SRP), payable to the Internal Revenue Service. 590 B.R. at 864-65. The IRS assessed an SRP against the debtor and filed a proof of claim asserting priority for the debt under § 507(a)(8)(E). *Id.* at 864. The debtors sought to recharacterize the debt as a non-priority debt. The bankruptcy court held that the debt, if it was a tax, was not an excise tax because it was not based on "the manufacture, sale, or use of goods or on an occupation or activity." *Id.* at 869. "The payment is due based on a condition, namely, lacking health insurance, rather than

an activity." *Id.* The district court affirmed, holding that an excise tax is a tax on a specific affirmative act, usually the purchase of a particular good or service, be it the manufacture, sale or consumption of a commodity, the engaging in of an occupation, or the acquisition of a right or license to engage in an occupation." 623 B.R. at 845.

Other federal courts agree that an "excise tax" implicates activity. The Fifth Circuit has observed that "an excise tax is imposed on some type of activity" and "'a discrete act by the person or entity being taxed.'" *In re Chesteen*, 799 F. App'x at 240 (quoting *Rizzo*, 741 F.3d at 706). In *In re DeRoche*, 287 F.3d 751 (9th Cir. 2002), the Ninth Circuit explained:

> [A] fundamental characteristic of a typical excise tax is that it is a discrete, one-time tax based on a single act by the person or entity taxed, such as a sale or an application for a license. A person cannot avoid owing a typical excise tax arising out of a past act, for the act has already occurred. But he or she can avoid owing a future tax by the simple expedient of refraining from an act that would give rise to the tax. This characteristic of a typical excise tax is important to an understanding what Congress intended in § 507(a)(8)(E)(ii).

*Id.* at 756.

Here, the reimbursement claim is not a tax on any particular or discrete activity. Instead, like the tax at issue in *Huenerberg*, if a reimbursement claim is a tax it is on inactivity, i.e., the failure to obtain insurance. Therefore, the Reimbursement Debt cannot be an excise tax.

Other courts have held that the activity requirement for an excise tax can be satisfied by certain acts of the uninsured employer, such as the act of doing business in the state or the act of employing an employee. For example, the Ninth Circuit in

*In re DeRoche* held that the reimbursement claim was a tax on "the act of employing a worker without carrying the required [workers' compensation] insurance when the worker [was] injured." 287 F.3d at 757.

The act of employment alone does not lead to a reimbursement claim in Wisconsin. It is probably the case that, unfortunately and despite the Department's best efforts, many employers in Wisconsin employ workers without obtaining the requisite insurance. If their employees are never injured on the job, then they never have to pay a reimbursement claim to the Department. *See* Wis. Stat. § 102.81(1)(a) ("If an employee . . . suffers an injury . . . the department or the department's reinsurer shall pay . . ."). So it cannot be the act of employment that gives rise to the charge.

The taxed activity could be the employee's injury, but there are some problems with that view as well. The suffering of an injury is not a specific affirmative act, and it is certainly not an activity by the employer that owes the debt. The injury plainly is not the manufacture, sale, use, or consumption of goods or commodities. While an employee may surely suffer an injury *while* engaged in "an occupation or activity," the tax itself is imposed only upon the suffering of an injury and not at any occupation or activity itself. Nor can the suffering of an injury be equated to "the enjoyment of a privilege."

The fact of an injury does not give rise to automatic liability of the uninsured employer. The employee must make a claim with the Fund, and the Department must determine that the employer and employee are both covered by the Act and

that the injury arises out of the employee's employment. Wis. Stat. § 102.03. In this case, the employee was injured on April 28, 2021, but the Fund did not inform Baraka of its liability until July 19, 2022, illustrating the disconnect between any activity by Baraka or Chebii and the imposition of liability.

In addition, Baraka and Chebii could not have avoided the reimbursement claim because whether an employee sustains an injury is not within the control of the employer. Of course, an employer can avoid owing a reimbursement claim by obtaining the required worker's compensation insurance, but that is true for every covered employer in Wisconsin, yet many uninsured employers will never owe a reimbursement claim despite their lack of insurance. So it is not the failure to procure insurance that results in the reimbursement claim; it is something wholly outside the employer's control and requires no action or activity by the employer.

For these reasons, the Debt is not an excise tax under § 507(a)(8)(E).

**Whether the Debt is an Excise Tax on a Transaction**

To be nondischargeable, the excise tax must be "on . . . a transaction occurring during the three years immediately preceding the" petition date. 11 U.S.C. § 507(a)(8)(E). "Transaction," like "tax" and "excise," is not defined in the Bankruptcy Code. The Seventh Circuit has observed that the legislative history of § 507(a)(8)(E) "indicates that Congress intended the term 'transaction' to be defined broadly" because the legislative record indicates that "*[a]ll* Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes." *See Groetken v. Ill. Dept. of Revenue (In re*

*Groetken)*, 843 F.2d 1007, 1013-14 (7th Cir. 1988) (quoting 124 Cong. Rec. 34,016 (Senate), *reprinted in* 1978 U.S. Code Cong. & Admin. News 6505, 6567; 124 Cong. Rec. 32,416 (House), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 6436, 6498).

"But following the Seventh Circuit's suggestion that 'transaction' be read broadly does not mean that one must interpret 'transaction' to include non-transactions; broadly does not mean without limit." *Huenerberg II*, 623 B.R. at 846. Even broadly construed, "'transaction' suggests *action*—such as the manufacture or consumption of a commodity, which, when viewed in strict isolation at least, may be a solitary act—not *in*action, deliberate or otherwise." *In re Huenerberg I*, 590 B.R. at 871. "[N]o definition of 'transaction' . . . reasonably encompasses an individual's unilateral and solitary decision *not* to act." *Huenerberg I*, 590 B.R. at 871.

Other federal courts have similarly concluded that the failure to purchase insurance cannot be a "transaction" under Section 507(a)(8)(E). *See In re Szczyporski*, 34 F.4th 179, 189 n.5 (3d Cir. 2022) ("[t]he failure to purchase healthcare is not a 'transaction'"); *In re Lorber Indus. of California*, 373 B.R. 663, 670 (B.A.P. 9th Cir. 2007) ("[T]he failure to obtain insurance—by analogy here, the end of Lorber's approved self-insured status—is not a 'transaction.'"), *aff'd on other grounds*, 564 F.3d 1098 (9th Cir. 2009); *In re George*, 361 F.3d at 1163 ("[H]iring does not occasion a Trust Fund claim in California, and neither does an employee injury. What occasions such a claim is the *failure* to make the transaction of purchasing workers' compensation insurance."); *In re Jones*, 610 B.R. 663, 668-69

(Bankr. D. Mont. 2019) (agreeing that "the term 'transaction' cannot be read to capture the Debtors' 'inaction, deliberate or otherwise'").

Moreover, many of the reasons why there is no relevant activity to qualify the Reimbursement Debt an excise tax also demonstrate why there was no transaction. Again, an uninsured employer's act of employing a worker does not lead to liability. What leads to liability is the employee's injury, which must occur while the employer is uninsured. An injury does not seem to be a transaction, at least not for the employer. And the employer has no control over when, where, and how the transaction occurs for the purpose of cabining its liability. This is unlike the typical excise tax, where the debtor can limit his purchase of, e.g., alcohol, cigarettes, or gas, or he can decide whether to engage in certain occupations.

Employers subject to the Act surely engage in conceivable "transactions" like employing employees and participating in commerce in Wisconsin. Still, the Act does not impose a tax "***on***" such transactions as contemplated by § 507(a)(8)(E). Only the suffering of an injury by an employee "occasions" or "induces" tax liability under the statute. *See* Wis. Stat. §§ 102.81(1), 102.82; *In re George*, 361 F.3d at 1163 (focusing on "[w]hat occasions such a claim"); *United States of America v. Brown*, 658 F. Supp. 3d 716, 727 (D. Ariz. 2023) (focusing on the "liability-inducing event").

Moreover, there is not necessarily a single liability-inducing event or "transaction." An employee's injury may require months or years of medical care, all of which would be the responsibility of an uninsured employer. Indeed, an

employee may continue to make medical claims for up to 12 years depending on the type of injury. *See* Wis. Stat. § 102.17(4). The Department does not need to wait for an employee's care to be complete or its claim to be fully paid from the Fund to seek reimbursement from the uninsured employer. As costs mount, the reimbursement claim increases with no single event leading to imposition of a specific amount of liability. This makes the reimbursement claim unlike a typical excise tax where the tax is assessed based on a single transaction with set liability that does not change or increase over time.

Because the Reimbursement Debt is not an excise tax on a transaction, it does not fall within § 507(a)(8)(E). This is the only provision in § 507(a)(8) that the Department relies on for its claim seeking a declaration of nondischargeability under § 523(a)(1)(A). Therefore, the Court concludes that the Department is not entitled to a declaration of nondischargeability under § 523(a)(1)(A) for the Reimbursement Debt.

**Count II – 11 U.S.C. § 523(a)(7)**

Count II of the Department's adversary complaint seeks a declaration that the Reimbursement Debt is not dischargeable under § 523(a)(7). Dkt. No. 1 at 30. That section excepts from discharge any debt

> for a fine, penalty, or forfeiture payable to and for the benefit of a governmental entity, and is not compensation for actual pecuniary loss, other than a tax penalty—
>
> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
>
> (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

11 U.S.C. § 523(a)(7).

Fines or penalties assessed to reimburse or defray government costs are not included in the discharge exception under § 523(a)(7). *See Williams v. Motley*, 925 F.2d 741, 745 (4th Cir. 1991) (service fee "assessed to defray the administrative cost" was not "excluded from the discharge provisions by section 523(a)(7)"). In contrast, a penalty that bears some relation to the government's costs but is not otherwise reimbursement because the costs were covered by a general operating budget may be nondischargeable under § 523(a)(7). *Osicka v. Office of Lawyer Regulation*, 25 F.4th 501, 507 (7th Cir. 2022). In *Osicka*, the Seventh Circuit held that costs assessed against a debtor in connection with an attorney disciplinary proceeding were nondischargeable under § 523(a)(7). *Id.* The agency had expended money that was already allocated to the sort of disciplinary investigations and actions, and the agency had experienced no loss from pursuing the action against the debtor. *Id.*

Chebii argues that § 523(a)(7) does not apply to render the Reimbursement Debt nondischargeable because the debt represents compensation for actual pecuniary loss to the Fund. Dkt. No. 20 at 9-10. The declaration submitted by the chief of the Fund confirms that the Department's claim against Chebii represents a dollar-for-dollar reimbursement of the amounts the Fund paid to the employee pursuant to the Fund's responsibility under state law. Galarowicz Decl. ¶¶ 30, 35, 36, 39. In its briefing the Department does not contest Chebii's assertion that the Reimbursement Debt is compensation for the Fund's pecuniary loss.

This case is unlike *Osicka*, where the assessed costs were payable to an operating fund that would be spent regardless of the assessment of costs. Here, the Fund is funded only through various assessments made by the Department and by the Department's pursuit of reimbursement claims. If the Fund is not sufficiently funded, then the Department must transfer funds from a different appropriation for worker's compensation, rendering those funds unavailable for other purposes. *See* Wis. Stat. § 102.81(c). This potential underfunding of the Fund if reimbursement claims like the one at issue here are not paid means that the Reimbursement Debt is compensation for an actual pecuniary loss to the Fund.[4] The Reimbursement Debt is not excepted from discharge under § 523(a)(7).

## CONCLUSION

For the reasons stated above, the Court concludes that Chebii is entitled to summary judgment in her favor on Counts I and II of the complaint. The Court will enter a separate order consistent with this decision.

Dated: September 30, 2026

Rachel M. Blise
United States Bankruptcy Judge

[4] A penalty that is compensation for actual pecuniary loss may be nondischargeable under § 523(a)(1)(A) because such claims may fall under 11 U.S.C. § 507(a)(8)(G). The Department does not argue that the Reimbursement Debt is a penalty under § 507(a)(8)(G).